IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BOBBY L. GUILFORD JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:06-CV-130-MEF |
| ) | |
| JO ANNE B. BARNHART ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401, alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). Based on its review of the record and the briefs of the parties, the court concludes that the

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

decision of the Commissioner should be reversed.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[2] the Commissioner employs a five step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the *Listing of Impairments*]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir.

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. DISCUSSION

In his application for benefits, the plaintiff's primary complaint was of severe and persistent headaches (Tr. 38). The ALJ found these headaches to be one of the plaintiff's "severe" impairments (Tr. 25) but did not find his allegations entirely credible (Tr. 26). The plaintiff argues that the ALJ did not properly consider his reported pain.

---

1981) (Unit A).

The ALJ discussed the plaintiff's headaches as follows:

Through the year 2002, the record noted occasional allegations of a history of headaches that were preceded by a tingling sensation and were of slight degree, and which could be warded off or responded to non-prescription medications such as aspirin or Excedrin...Through calendar year 2002, the record did not suggest any physical or nonexertional symptoms that lasted for any period of 12 consecutive months and which substantially precluded the claimant from...work-related activities...

On January 15, 2003, consulting psychologist Doug McKeown, Ph.D....described the claimant as having significant somatization...On January 21, 2003, [consultative examiner] Dr. Bedinger noted the claimant had no physical limitations and his primary problems resulted from reported headaches and hallucinations.  On January 24, 2003, the Veterans Administration noted that the claimant alleged headaches...On March 5, 2003, the Veterans Administration noted the claimant's history of headaches and hallucination, but his complaint on that date was of an ear discharge...He was taking no prescription medication for headaches, but would use Tylenol.  On March 13, 2003, Richard K. Shack, M.D....noted his history of headaches...On April 9, 2003, the Veterans Administration noted the claimant reported his headaches were not as intense ....On April 18, 2003, the claimant reported he had stopped taking medications...In May, 2003, the claimant noted a headache that resolved and he requested an MRI test for arthritis.  He had no other complaints.  In June 2003, the claimant reported...a history of severe headaches...[After surgery in October 2003,] the claimant did report his headaches lessened after carpal tunnel surgery.

The record through 2003 revealed that the claimant's headaches, first noted in July, 2002, but referenced to a three month history, or approximately April, 2002, required no ongoing medications as early as March, 2003, within 12 months of the alleged onset of headaches...The record through 2003 did not describe any physical impairment that lasted for any period of 12 consecutive months...

...The claimant's headaches were not shown to have lasted for 12 months...

The claimant testified that he had migraine headaches that began in May or June, 2002.  He would have 20 headaches a day, and his headaches caused his legs to become weak...His pain rated at an 8 or 9 on a scale of 1 (little) to 10

4

> (severe).  The smell of food, bright lights, and noise would cause him to have a headache.  He was on no prescription medications for headaches.  He would take aspirin, and that would relieve his headache after 30 to 45 minutes...The claimant noted that tingling in his head would start a headache...
>
> The claimant described severe headache pain, rated at 8 or 9 on a scale of 1 to 10...The record shows that the claimant reported relief of his headaches with aspirin, that taking aspirin when experiencing tingling would prevent headaches, and that his headaches were lessened following surgery for carpal tunnel syndrome.  Significantly, the record did not describe any period of 12 consecutive months during which the claimant reported severe and disabling headaches.  The records clearly described improvement with non-prescription medication and described headaches of slight severity...

(Tr. 21-23).  Independent review of the record does not support the ALJ's characterization of the evidence.

The VA reports from March 2003 show that the plaintiff was complaining about severe headaches *as well as* an ear discharge (Tr. 335-38).  In March, 2003, Dr. Shack prescribed first Trazodine (Tr. 267), then Ultram (Tr. 263) both for headache pain; he did not simply note a "history" of headaches as suggested by the ALJ.  The plaintiff told Dr. Shack that taking 100 Tylenol in two days helped his pain "shortly" (Tr. 267) and told his VA physicians that he took 60 Tylenol in one day to relieve headaches (Tr. 338).  The ALJ apparently found this credible; but the reports of Dr. Shack and the VA physicians cannot be said to show "headaches of slight severity" that were "controlled with non-prescription medication" and required "no ongoing medications as early as March 2003."[4]  The plaintiff's

---

[4] As noted by the government (Doc. #14, filed July 31, 2006, p. 5-6), Dr. Shack did express "some concerns on exactly how real [the plaintiff's] symptoms are" (Tr. 263) – in keeping with the psychiatric examiner's notes that the plaintiff had "some tendency to embellish" his symptoms (Tr. 221), which had "minimal organic basis" (Tr. 220), and another examiner's note that his complaints had a

5

neurologist's record from April 9, 2003 does show that the plaintiff reported headaches that were "not intense like they use to be" (Tr. 324), but the record from April 18 shows that he said he had stopped taking medication, not because his headaches were gone, but because they "continued daily after each dose" (Tr. 320).  Physician's records from June and August 2003 show that the plaintiff complained of headaches at that time, was prescribed the pain medication Naproxen, and complained that his headaches "did not change" when he took it (Tr. 290, 292);[5] he did not simply report a "history" of headaches as stated by the ALJ, and he received prescription medication more than twelve months after his initial complaint.  The ALJ's finding to the contrary was in error.

Furthermore, the plaintiff consistently described his headaches as severe and stated that his use of aspirin and other non-prescription medications only sometimes brought relief (Tr. 222, 329, 363, 366, 368, 373, 379); at the hearing, as noted by the ALJ, he stated that aspirin would give him "total relief," but only after 30-45 minutes (Tr. 587).[6]  The ALJ apparently relied on the plaintiff's reports in reaching his conclusions, but those reports do

---

"mild histrionic tone" (Tr. 434) – but this did not enter into the ALJ's analysis, and therefore may not enter into the court's analysis.  Likewise, the record shows that the plaintiff sometimes stopped taking his medications on his own initiative and said they were not helping (Tr. 226, 307, 320, 337, 339, 357), but the ALJ did not use the plaintiff's failure to follow prescribed treatment to discount his testimony, and the court may not do so sua sponte.

[5] At the hearing, by contrast, the plaintiff testified that Naproxen "pretty much worked" on his headaches, though he also said that he switched between Naproxen and aspirin for reasons that are unclear to the court (Tr. 591).

[6] At the hearing (in August 2004), the plaintiff also testified that his headaches were not as severe as they had been a year before, in keeping with his statement that the headaches improved (and became less frequent) after his carpal tunnel surgery in October 2003 (Tr. 532, 534).

6

not support the ALJ's findings that the headaches were "of slight severity," and only partly support his finding that they showed "improvement with non-prescription medications." Because the ALJ did not correctly characterize the reports on which he relied, his decision cannot be said to be based on substantial evidence. The decision is due to be reversed.

## IV. CONCLUSION

Based on the foregoing analysis, it is the RECOMMENDATION of the Magistrate Judge that the decision of the Commissioner be REVERSED, and the case REMANDED to the Commissioner for further proceedings consistent with this opinion. The parties are

DIRECTED to file any objections to this recommendation on or before **February 15, 2007**. Any objections filed must specifically identify the findings in the Recommendation of the Magistrate Judge that are the subject of the objections. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Resolution Trust Corp. v. Hallmark Builders, Inc.,* 996 F.2d

1144, 1149 (11th Cir. 1993).

Done this 1st day of February, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE